**Nos. 15-2385, 15-2386**

# In the United States Court of Appeals for the Seventh Circuit

———

KLEEN PRODUCTS LLC, ET AL.,
PLAINTIFFS-APPELLEES

*v.*

INTERNATIONAL PAPER COMPANY, ET AL.,
DEFENDANTS-APPELLANTS

———

*ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION, NO. 10-CV-5711,
HON. HARRY D. LEINENWEBER, PRESIDING*

———

**REPLY BRIEF FOR
DEFENDANT-APPELLANT ROCKTENN CP, LLC**

———

ELIZABETH P. PAPEZ
*Winston & Strawn LLP*
*1700 K Street, N.W.*
*Washington, DC 20006*
*(202) 282-5000*
*epapez@winston.com*

MATTHIAS A. LYDON
JAMES F. HERBISON
MICHAEL P. MAYER
*Winston & Strawn LLP*
*35 W. Wacker Drive*
*Chicago, Illinois 60601*
*(312) 558-5600*
*malydon@winston.com*

*Counsel for Defendant-Appellant RockTenn CP, LLC*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................. ii

INTRODUCTION ................................................................................................ 1

ARGUMENT ....................................................................................................... 3

I.  The District Court Failed To Assess The Requirements Of Rule 23 With Respect To Plaintiffs' Claim For Post-Discharge Liability Against RockTenn, And Plaintiffs Cannot Meet Them. ................................... 3

II. The Certification Of The Class Against RockTenn Conflicts With Settled Bankruptcy Law. ................................................................................ 6

CONCLUSION ................................................................................................. 10

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Comcast Corp. v. Behrend,*
  133 S. Ct. 1426 (2013) ................................................................................................passim

*Dextone Co. v. Bldg. Trades Council,*
  60 F.2d 47 (2d Cir. 1932) ........................................................................................... 8

*Gunnells v. Healthplan Servs., Inc.,*
  348 F.3d 417 (4th Cir. 2003) ...................................................................................... 3

*Havoco of Am., Ltd. v. Shell Oil Co.,*
  626 F.2d 549 (7th Cir. 1980) ...................................................................................... 8

*In re Automotive Parts Antitrust Litig.,*
  2013 WL 2456010 (E.D. Mich. June 6, 2013) .......................................................... 8

*In re Lear Corp.,*
  2012 WL 5438929 (S.D.N.Y. Nov. 5, 2012) ............................................................. 8

*In re Polyurethane Foam Antitrust Litig.,*
  --- F. Supp. 3d ---, 2015 WL 507141 (N.D. Ohio Feb. 6, 2015) ............................... 8

*In re Text Messaging Antitrust Litig.,*
  782 F.3d 867 (7th Cir. 2015) ...................................................................................... 4

*In re Travel Agent Comm'n Antitrust Litig.,*
  583 F.3d 896 (6th Cir. 2009) ...................................................................................... 5

*In re WorldCom, Inc.,*
  546 F.3d 211 (2d Cir. 2008) ................................................................................... 5, 6

*United States v. Benson,*
  79 F. App'x 813 (6th Cir. 2003) ................................................................................. 8

*United States v. Castillo,*
  814 F.2d 351 (7th Cir. 1987) ...................................................................................... 8

*United States v. Ellerman,*
  411 F.3d 941 (8th Cir. 2005) ...................................................................................... 8

*United States v. Gravier,*
  706 F.2d 174 (6th Cir. 1983) ...................................................................................... 8

*United States v. Shelton*,
  669 F.2d 446 (7th Cir. 1982) .................................................................................. 8

*Wal–Mart Stores v. Dukes*,
  131 S. Ct. 2541 (2011) .......................................................................................... 9

**STATUTES**

11 U.S.C. § 1141(d)(1) ................................................................................................. 6

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23 ...............................................................................................passim

**INTRODUCTION**

Plaintiffs concede that "in order to determine whether RockTenn violated antitrust laws, [the jury] must only consider RockTenn's *post-discharge conduct* and determine whether *that conduct* violated the law." Plaintiffs' Br. 67 (quoting S.A.66) (emphasis added).[1] To do so, the conduct must satisfy all elements of an antitrust claim—conspiracy, antitrust impact, and damages. And to certify a class on this claim, Plaintiffs must present "evidentiary proof," *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013), that all of these elements "can be established using common [evidence] at trial." Dkt. 658, at 1-2. They failed to do so. Neither the record nor their brief identifies any common proof of antitrust impact or damages after RockTenn's bankruptcy discharge. Certification was thus improper, and Plaintiffs' response is a sleight of hand that simply underscores the case for reversal.

Plaintiffs start with the fiction that their claim against RockTenn "presents but one issue that is distinct from [their] claim against the rest of the Defendants: whether [RockTenn] participated in the conspiracy *after* its discharge from bankruptcy." Plaintiffs' Br. 59 (emphasis original). They then state that this conspiracy question "is common across the class," *id*. 60, and declare that "[b]ecause RockTenn, if found liable, will be liable to the same extent as any other co-conspirator, it has no separate ground for challenging the district court's determination that impact and damages are subject to common proof." *Id*. 61. That is sophistry. It is *not* just the "conspiracy" element of their claim against RockTenn that is "distinct"; it is

---

[1]   Abbreviations herein have the same meanings as in the parties' principal briefs.

their burden of proving RockTenn's post-discharge "liability," which requires proof of *all* elements including antitrust impact and damages. This point alone is fatal to Plaintiffs' Rule 23 case, because the record contains no common post-discharge evidence on either element. Plaintiffs respond that RockTenn's post-discharge "participation in the conspiracy" (Plaintiffs' Br. 26) allows them to certify a class based on *pre*-discharge evidence of these elements in their (flawed) economic models and (inapposite) references to Smurfit-Stone. Plaintiffs' Br. 62-63. But this argument runs afoul of the Bankruptcy Code, which Plaintiffs fleetingly admit gives RockTenn a "clean slate." *Id*. 63.

Plaintiffs ultimately conclude that "basic conspiracy law" effectively trumps the Bankruptcy Code in antitrust cases, *id*. 62-63, but their support for this conclusion consists of a string of conspiracy cases that do not involve bankruptcy orders or address the bankruptcy authorities in RockTenn's brief. *Id*. 61-63. Plaintiffs try to distract from this fatal gap in their case by claiming that all of RockTenn's concerns can be addressed by "limiting instruction[s]" at trial. *Id*. 67. But again this argument simply shows that it is Plaintiffs—not RockTenn—who put the "merits cart before the class-certification horse." *Id*. 4. The district court's power to instruct the jury on merits issues at trial does not justify improper certification of a class now, where the record reveals that there is indeed a mismatch between Plaintiffs' certification proof and their "liability case." *Comcast*, 133 S. Ct. at 1433. Their (flawed) Rule 23 proof of antitrust impact and damages is limited to the pre-discharge period, but their theory of liability requires post-discharge proof of these liability ele-

2

ments.  The certification order was thus improper, and should be reversed for the reasons herein as well as in the joint reply brief, which RockTenn joins and adopts.

## ARGUMENT

**I. The District Court Failed To Assess The Requirements Of Rule 23 With Respect To Plaintiffs' Claim For Post-Discharge Liability Against RockTenn, And Plaintiffs Cannot Meet Them.**

It is undisputed that RockTenn can be held liable only for its "post-discharge" conduct.  Plaintiffs' Br. 67; A.10, Dkt. 65, Am. Compl. ¶ 22.  This concession is critical because it means Plaintiffs must meet all the requirements of Rule 23 with respect to this post-discharge claim against RockTenn, *e.g.*, *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 441 (4th Cir. 2003), including the requirement that "at the class certification stage (as at trial), any model supporting a plaintiff's damages case *must be consistent with its liability case.*"  *Comcast*, 133 S. Ct. at 1433 (emphasis added).  Plaintiffs' brief confirms their failure to meet these requirements.

As noted, Plaintiffs begin with the erroneous claim that the "one issue" for RockTenn is "whether it participated in the conspiracy after its discharge."  Plaintiffs' Br. 59.  That is not true—participating in a conspiracy is only one element of a Section 1 claim.  Plaintiffs must also produce Rule 23 evidence on the other two elements—impact from the conspiracy and damages—to proceed with a class claim for RockTenn's civil liability in the four-month portion of the class period after RockTenn's discharge.  *Comcast*, 133 S. Ct. at 1433-34.

3

The problem is that Plaintiffs never presented Rule 23 evidence of common impact and damages for that period.[2] They tendered no economic model for that timeframe, and their experts confirmed that they never attempted to assess antitrust impact in the post-discharge portion of the class period. A.327, Dkt. 763-2, Dwyer Dep. at 258-59. Indeed, Dr. Dwyer's report shows no price increase implemented after RockTenn's discharge, *see* A.145, A.166, Dkt. 658-4, 658-5, Dwyer Report, at 11 n.18 & Ex. 5, and contains no evidence that any purchaser of containerboard products paid supracompetitive prices after RockTenn emerged from bankruptcy.[3]

Plaintiffs seek to overcome this failure of Rule 23 proof by claiming that "all [pre-discharge] proof of impact and damages that applies to the other Defendants applies to RockTenn as well." Plaintiffs' Br. 26; *id*. 65 (admitting that Plaintiffs seek to hold RockTenn liable for "the harm that occurred prior to its discharge from

---

[2]  Plaintiffs have notably abandoned their previous argument that "time lags" in the implementation of pre-discharge price increases led to post-discharge impact, *see* Pls. 23(f) Opp. 14, and thus, Plaintiffs' appeal presents no theory of antitrust impact that applies during RockTenn's liability period.

[3]  Plaintiffs claim that they have offered common evidence of a conspiracy and RockTenn's participation in that conspiracy post-bankruptcy. Plaintiffs' Br. 60. But the post-discharge conduct Plaintiffs cite is not "evidence" (Plaintiffs' Br. 60) of RockTenn's post-discharge participation in an antitrust conspiracy because it is equally consistent with lawful, unilaterally "self-interest[ed]" conduct, particularly given Plaintiffs' claim of an oligopolistic market in which parallel conduct is the norm. *In re Text Messaging Antitrust Litig.*, 782 F.3d 867, 879 (7th Cir. 2015). For example, Plaintiffs claim that a RockTenn executive internally forwarded "a message about [other defendants'] announced increases" before RockTenn announced its own price increase. Plaintiffs' Br. 60-61. But the record shows that the "message" was a public analyst's report. The fact that RockTenn attended a "trade association meeting" after other defendants had announced their price increases (Plaintiffs' Br. 60) is likewise not proof of a conspiracy, because such activity is perfectly lawful. *Text Messaging*, 782 F.3d at 878.

bankruptcy"). But this argument cannot be squared with Rule 23, the holding of *Comcast*, or RockTenn's Discharge Order. *See* Dkt. 753-3, Confirmation Order ¶¶ 51, 53; *see also In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 902 (6th Cir. 2009) (dismissing antitrust claims where plaintiffs attempted to show price impact based on pre-discharge conduct after debtor emerged from bankruptcy); *In re WorldCom, Inc.*, 546 F.3d 211, 221 (2d Cir. 2008) (finding no post-discharge liability where potential liability was based on pre-discharge conduct).

Plaintiffs do not cite a single case certifying a class against a discharged debtor based on pre-discharge evidence of injury and conduct. And their observation that RockTenn's cases involved no allegations of post-discharge conduct (Plaintiffs' Br. 64) misses the mark for two reasons. First, Plaintiffs—not RockTenn—bear the burden of "affirmatively demonstrat[ing] [their] compliance" with Rule 23. *Comcast*, 133 S. Ct. at 1432. Second, that certain of RockTenn's cases involved no allegations of post-discharge conduct does *not* mean they allow conspiracy law to trump bankruptcy protections or permit Plaintiffs to certify post-discharge class claims based on pre-discharge evidence. The portion of *Travel Agent* Plaintiffs cite (Plaintiffs' Br. 64) discussed the pre-discharge timing of plaintiffs' allegations only in the context of rejecting their continuing violation claim. 583 F.3d at 902. It did not suggest, much less hold, that allegations of post-discharge misconduct would allow the plaintiff to circumvent the defendant's bankruptcy protection and recover for pre-discharge antitrust impact or damages. *See id.* The same is true of *WorldCom*. Indeed, *WorldCom* suggests that a bankruptcy discharge protects even a de-

5

fendant that has engaged in "post-discharge violations" where they "arose from a continuing course of conduct for which the plaintiff could have sued prior to the discharge." 546 F.3d at 221. Here, it is undisputed that Plaintiffs could have sued RockTenn or its predecessor for antitrust violations before RockTenn emerged from bankruptcy but they chose not to do so. RockTenn Br. 6 (citing A.341-43, Dkt. 763-2, Harris Dep. at 26, 31-35; A.10, Dkt. 65, Am. Compl. ¶ 22). The district court did not properly engage these points—or Plaintiffs' lack of post-discharge Rule 23 evidence—in its order.

## II. The Certification Of The Class Against RockTenn Conflicts With Settled Bankruptcy Law.

Plaintiffs' response to RockTenn's certification challenge boils down to the assertion that "because RockTenn (if it participated in the conspiracy post-bankruptcy) is liable for the harm caused by the conspiracy—including the harm that occurred prior to its discharge from bankruptcy—evidence of impact and damages caused by the conspiracy applies to RockTenn as it does to co-Defendants." Plaintiffs' Br. 65. This circular argument incorrectly assumes the answer to a question in this appeal: whether "basic conspiracy law" (Plaintiffs' Br. 62) trumps the protections in RockTenn's Confirmation Order and the Bankruptcy Code. 11 U.S.C. § 1141(d)(1) ("confirmation of a plan discharges the debtor from *any debt* that arose before the date of such confirmation.") (emphasis added). The answer is no—conspiracy law does not nullify RockTenn's discharge rights to allow the certification order here. The best way to reconcile conspiracy and bankruptcy law in the circumstances here is to limit class claims against discharged debtors to those whose

elements can be established with post-discharge evidence of injury and conduct. Plaintiffs' arguments otherwise illustrate the point.

Citing legally and factually benign "evidence" (*see* n.3, *supra*) of RockTenn's post-bankruptcy conduct, Plaintiffs proclaim that RockTenn's confirmation order "provides RockTenn no relief from the weight of liability incurred by participating in a price-fixing conspiracy post-discharge," including pre-discharge harm and damages. Plaintiffs' Br. 63. This pivotal statement is unaccompanied by any legal authority because the "bedrock conspiracy" (Plaintiffs' Br. 27) cases they cite for holding late-joiners liable for harm throughout a conspiracy do not involve discharged debtors. As RockTenn explained in its opening brief, its discharge order necessarily released it of all liability—including joint and several or co-conspirator liability—for conduct, harm or damages in the pre-discharge period. RockTenn Br. 22-30. Hence, unlike the typical latecomer who would be jointly and severally liable for antitrust injury and damages for the entire period of the conspiracy, RockTenn should be held liable for conduct only in the period following its bankruptcy discharge. That is the best way to reconcile the Bankruptcy Code's "clean slate" and "fresh start" mandates with conspiracy law, which would subject RockTenn to liability for the acts of its alleged co-conspirators in the post-discharge portion of the conspiracy and class period, but not in the period before discharge. This approach (unlike the one Plaintiffs urge the Court to adopt) respects the Bankruptcy Code's grant of a "clean slate" for pre-discharge liability without giving the debtor a "free pass" to engage in post-discharge misconduct.

7

Plaintiffs do not engage, much less refute, the Bankruptcy Code's provisions, legislative history, and cases RockTenn cites in support of its argument that this discharge precludes class certification based on evidence of pre-discharge antitrust impact and damages. *See* RockTenn Br. 12-13, 26-30. They instead rely on a nearly page-long string cite of conspiracy cases (Plaintiffs' Br. 62) that do not involve a debtor whose liability was discharged in bankruptcy.[4]

And the two district court cases Plaintiffs cite involving bankrupt entities— *In re Automotive Parts Antitrust Litigation*, 2013 WL 2456010, (E.D. Mich. June 6, 2013), and *In re Polyurethane Foam Antitrust Litig.*, --- F. Supp. 3d ---, 2015 WL 507141, at *15-17 (N.D. Ohio Feb. 6, 2015)—do not aid them. *Automotive Parts* addressed only whether post-discharge allegations were sufficient to state a claim. 2013 WL 2456010, at *5-6. It never decided whether a defendant's post-discharge conduct on one element of a claim allows a plaintiff to rely on pre-discharge evidence of other elements required for class certification. *See id.*; *In re Lear Corp.*, 2012 WL 5438929, at *3 (S.D.N.Y. Nov. 5, 2012*)*. Equally unavailing is Plaintiffs' reliance on *Polyurethane Foam* because that case involved an issue of successor liability for a company that did not receive a bankruptcy discharge, but instead purchased assets from a bankrupt and defunct company. 2015 WL 507141, at *8-10.

Here, RockTenn actually received a release from all antitrust liability—

---

[4]  *See, e.g.*, *Havoco of Am., Ltd. v. Shell Oil Co.*, 626 F.2d 549 (7th Cir. 1980) (no discharged defendant); *United States v. Castillo*, 814 F.2d 351 (7th Cir. 1987) (same); *United States v. Shelton*, 669 F.2d 446, 454 (7th Cir. 1982) (same); *United States v. Ellerman*, 411 F.3d 941 (8th Cir. 2005) (same); *Dextone Co. v. Bldg. Trades Council*, 60 F.2d 47 (2d Cir. 1932) (same); *United States v. Benson*, 79 F. App'x 813 (6th Cir. 2003) (same); *United States v. Gravier*, 706 F.2d 174 (6th Cir. 1983) (same).

8

including joint and several liability through the discharge period—when it emerged from bankruptcy. RockTenn Br. 12-13, 26-30. Accordingly, nothing in Plaintiffs' brief—including the quote they cite from Judge Shadur's decision on injunctive relief (Plaintiffs' Br. 16)[5]—refutes RockTenn's bankruptcy authorities or otherwise justifies the certification order's intrusion on RockTenn's discharge order.

Plaintiffs' last-ditch attempt to sidestep the authorities in RockTenn's brief is an argument that RockTenn's concerns can be addressed with a "limiting instruction" at trial (Plaintiffs' Br. 67) and that RockTenn's contentions otherwise "put[] the merits cart before the class-certification horse." *Id*. 4. The Supreme Court has already dispensed with such arguments. The district and appellate court rulings in *Comcast* found "no need for respondents to tie each theory of antitrust impact to a calculation of damages" because doing so "would involve consideration of the merits having no place in the class certification inquiry." *Comcast,* 133 S. Ct. at 1433. The Supreme Court reversed, holding that such "*reasoning flatly contradicts our cases requiring a determination that Rule 23 is satisfied, even when that requires inquiry into the merits of the claim.*" *Id*. (citing *Wal–Mart Stores v. Dukes*, 131 S. Ct. 2541, 2551-52, and n.6 (2011)) (emphasis added). It is thus Plaintiffs—not RockTenn— who "put[] the merits cart before the class-certification horse" in arguing that trial instructions can cure Rule 23 defects. Plaintiffs' Br. 4. The record here shows that

---

[5] Judge Shadur's statement that it would be "misleading to characterize [this] lawsuit . . . as seeking relief from Smurfit-Stone that is at odds with its discharge in bankruptcy" (Plaintiffs' Br. 16) simply reflects Plaintiffs' effort to avoid having this action enjoined by the bankruptcy court by formally conceding that they may "seek[] to recover damages from [RockTenn] for post-discharge conduct only." RockTenn Br. 6 (citing A.10, Dkt. 65, Am. Compl. ¶ 22).

Plaintiffs' alleged pre-discharge Rule 23 evidence of antitrust impact and damages is *not* "consistent with [their] liability case" against RockTenn for post-discharge antitrust violations. *Comcast*, 133 S. Ct. at 1433; RockTenn Br. 20-30. The certification order was therefore improper.

## CONCLUSION

For the reasons above, and those in defendants' other briefs, the district court's certification order should be reversed.

Respectfully submitted,

s/Matthias A. Lydon
MATTHIAS A. LYDON
JAMES F. HERBISON
MICHAEL P. MAYER
*Winston & Strawn LLP*
*35 W. Wacker Drive*
*Chicago, Illinois 60601*
*(312) 558-5600*
*malydon@winston.com*

ELIZABETH P. PAPEZ
*Winston & Strawn LLP*
*1700 K Street, N.W.*
*Washington, DC  20006*
*(202) 282-5000*
*epapez@winston.com*

*Counsel for Defendant-Appellant*
*RockTenn CP, LLC*

OCTOBER 19, 2015

**CERTIFICATE OF COMPLIANCE WITH
TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS,
AND TYPE STYLE REQUIREMENTS**

1.   This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B), as it contains 2,604 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.   This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6), as qualified by Circuit Rule 32(b), as it has been prepared in a 12-point, proportionally spaced typeface, Century Schoolbook, by using Microsoft Word 2010.

Dated:  October 19, 2015            s/Matthias A. Lydon
                                    MATTHIAS A. LYDON

                                    *Counsel for Defendant-Appellant
                                    RockTenn CP, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on October 19, 2015, I caused the foregoing brief to be electronically filed with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

    s/Matthias A. Lydon
    MATTHIAS A. LYDON

    *Counsel for Defendant-Appellant*
    *RockTenn CP, LLC*