**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP

1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Tel 202.955.8500
www.gibsondunn.com

Miguel A. Estrada
Direct: +1 202.955.8257
Fax: +1 202.530.9616
MEstrada@gibsondunn.com

May 23, 2016

Mr. Gino J. Agnello
Clerk of Court
United States Court of Appeals for the Seventh Circuit
Room 2722
219 S. Dearborn Street
Chicago, IL  60604

Re:     Supplemental Authority in *Kleen Products LLC* v. *International Paper Co.*,
          Nos. 15-2385 & 15-2386

Dear Mr. Agnello:

      Appellants respectfully submit *Ebert* v. *General Mills, Inc.*, No. 15-1735 (8th Cir. May 20, 2016) ("Op."). *Ebert* unanimously reversed an order certifying a Rule 23(b)(3) class of property owners seeking damages for alleged contamination from a General Mills facility, holding that "individual issues predominate the analysis of causation and damages that must be litigated to resolve the plaintiffs' claims." Op.2, 10. "Adjudicating claims of liability," *Ebert* held, "will require an inquiry into the causal relationship between the actions of General Mills and the resulting … contamination," which would "likely" necessitate "property-by-property assessment" of factors *beyond* "General Mills' actions" that might affect contamination at each property. Op.9-10. "[E]ven if a determination can be made class-wide on the fact and extent of General Mills' role," therefore, those causation issues "will *still* need to be resolved household by household." Op.10.

      Class certification was improper here for precisely the same reason:  Even assuming plaintiffs could prove the purported conspiracy, their experts admitted that *other*, non-collusive factors could affect prices each plaintiff paid.  Defendants' Br. 21-22.  Yet none of plaintiffs' purportedly classwide impact analyses even *attempted* to control for those factors.  Defendants' Br. 22-35; Reply Br. 6-13.  And plaintiffs' experts admittedly never analyzed *at all* the extent to which price increases were passed on to purchasers of thousands of diverse *finished* products, the vast majority of the alleged damages.  Defendants' Br. 29-31; Reply Br. 14-15.  As in *Ebert*, plaintiff-by-plaintiff causation analyses thus are unavoidably necessary and would overwhelm any supposedly common questions.

Beijing · Brussels · Century City · Dallas · Denver · Dubai · Hong Kong · London · Los Angeles · Munich
New York · Orange County · Palo Alto · Paris · San Francisco · São Paulo · Singapore · Washington, D.C.

*Ebert* further rejected the district court's attempt to "manufactur[e] a case that would satisfy the Rule 23(b)(3) predominance inquiry" by "artificially narrow[ing]" the class issues, reserving "individualized issues" including "'individualized exposure'" for separate proceedings. Op.8-9, 12.  Plaintiffs here have disclaimed any similar approach, Oral Arg. 34:23 ("we are not proposing [issue classes]"), and in any event *Ebert* illustrates why it would be improper:  Common issues must predominate across the *entire* case, because circumscribing the class issues would leave "many individual issues" that "will require trial," which would "unrave[l] and und[o] any efficiencies gained by" class treatment.  Op.9; *see also* Reply Br. 19 n.5.

Respectfully submitted,

/s/ Miguel A. Estrada
Miguel A. Estrada

## CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of May, 2016, I caused the foregoing to be electronically filed with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

    /s/ Miguel A. Estrada  
Miguel A. Estrada  
GIBSON, DUNN & CRUTCHER LLP  
1050 Connecticut Avenue, N.W.  
Washington, D.C. 20036  
(202) 955-8500  
mestrada@gibsondunn.com

United States Court of Appeals
For the Eighth Circuit
_____

No. 15-1735
_____

Karl Ebert; Carol Krauze; Jackie Milbrandt, individually and on behalf of all persons similarly situated

*Plaintiffs - Appellees*

v.

General Mills, Inc.

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: October 21, 2015
Filed: May 20, 2016

_____

Before WOLLMAN, BEAM, and GRUENDER, Circuit Judges.
_____

BEAM, Circuit Judge.

    General Mills, Inc., challenges the district court's grant of class certification in this environmental-contamination lawsuit.[1]  Plaintiffs, all owners of residential properties in a particular neighborhood in Minneapolis, Minnesota, sued General

---

[1] We have jurisdiction under 28 U.S.C. § 1292(e) and Federal Rule of Civil Procedure 23(f).

Mills, alleging General Mills caused the chemical substance trichloroethylene (TCE) to be released onto the ground and into the environment at a former General Mills facility, located within the same neighborhood. The plaintiffs claim that as a result of this contamination, TCE vapors migrated into the surrounding residential area, threatening the health of the residents and diminishing the value of their property. Finding the requisites of Federal Rule of Civil Procedure 23 satisfied, the district court certified a proposed class. Because the class lacks the requisite commonality and cohesiveness to satisfy Rule 23, we reverse.

## I.     BACKGROUND

General Mills owned and operated an industrial facility in the Como neighborhood of Minneapolis from approximately 1930 to 1977. In 1977, Henkel Corporation purchased the property from General Mills. From 1947 to 1962, General Mills disposed of as much as one-thousand gallons of hazardous substances per year by burying it in perforated drums in the ground at the General Mills facility. In December 1980, Congress passed the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), which required current and former owners of facilities at which chemicals were used to notify the Environmental Protection Agency (EPA) of suspected onsite disposal so EPA could identify and inventory hazardous sites and prioritize them on a national list for cleanup. Under this rubric, without admitting liability, General Mills, in 1984, signed a Consent Order and Remedial Action Plan with the Minnesota Pollution Control Agency (MPCA) in which it agreed, in part, to address TCE presence, if any, in groundwater below and near the facility. Accordingly, for nearly thirty years, General Mills participated in groundwater clean-up and remediation efforts in the Como neighborhood under the direction of, and in conjunction with, the federal government and the State of Minnesota.

In late 2011, in cooperation with the MPCA, General Mills began to evaluate the potential for migration of TCE in the form of vapor from shallow groundwater to the soil above. After discovering TCE in soil vapor in October 2013, General Mills modified the consent order with the MPCA to address the investigation and mitigation of vapor risk near the facility. Under that plan, General Mills contractors sampled soil gas beneath building foundations ("sub-slab sampling") and discovered variation among properties. Wherever the TCE concentration in sub-slab vapor exceeded a particular threshold, General Mills installed vapor mitigation systems (VMSs) to prevent TCE intrusion into the building above. As noted by the district court, according to one of General Mills' experts, 327 homes in the Como neighborhood have had soil vapor testing and do not have detectable TCE concentrations. General Mills installed VMSs in 118 homes in the Como neighborhood.

In this action, Plaintiffs allege that in the past, "over the course of many years," General Mills released TCE onto the ground and into the environment surrounding its former facility and that now the TCE, in the form of vapors, is threatening home and business owners in the Como neighborhood. The chemical's presence, say the plaintiffs, has decreased the neighborhood's property values.

The plaintiffs first learned of the TCE vapor contamination at issue in this suit in 2013, and each of the named plaintiffs received customized VMSs. Seeking to represent a class consisting of "all persons and non-governmental entities that own residential property within the 'Class Area,'" these residents assert five legal claims: (1) violation of CERCLA; (2) common law negligence; (3) private nuisance; (4) willful and wanton misconduct; and (5) violation of the Resource Conservation and Recovery Act (RCRA). According to the district court, Plaintiffs "appear[ed] to seek certification of only the following narrow issues: (1) whether [General Mills] is liable to owners of the properties in the defined Class Area; and (2) whether injunctive relief is warranted to compel comprehensive remediation." Plaintiffs voluntarily excluded

-3-

any personal injury claims and seek in this action only property damages and injunctive relief not relating to personal-injury claims.

The district court granted class certification after analyzing the Rule 23 factors,[2] and additionally denied General Mills' motion to exclude two of the plaintiffs' expert witnesses. In its certification order the district court took painstaking steps to delineate not only the issues to be determined, but the parties included in the class. The court bifurcated the action into two phases, limiting the issue to be determined at each phase (first liability, then damages) and specifically excluded all individual class

---

[2]Federal Rule of Civil Procedure 23 "Class Actions" states, in relevant part:

(a) Prerequisites. One or more members of a class may sue or be sued as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

(b) Types of Class Actions. A class action may be maintained if Rule 23(a) is satisfied and if: . . . (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

members "who have a physical injury as a result of [General Mills'] conduct." This was an attempt to avoid potential issues of res judicata and claim-splitting for those class members who do not litigate personal injury claims. General Mills challenges all of the district court's rulings on appeal. Stated very generally, General Mills contends that the exceedingly complex issues of injury and causation unique to each of the proposed plaintiffs in this class defeat considerations required for class certification (e.g., commonality, numerosity, typicality, adequacy, predominance, fairness) under Rule 23.

## II.   DISCUSSION

A class action serves to conserve the resources of the court and the parties by permitting an issue that may affect every class member to be litigated in an economical fashion. Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 155 (1982). Rule 23 governs class certification and states that "[t]o be certified as a class, plaintiffs must meet all of the requirements of Rule 23(a) and must satisfy one of the three subsections of Rule 23(b)." In re St. Jude Med., Inc., 425 F.3d 1116, 1119 (8th Cir. 2005). Here, the district court certified both a Rule 23(b)(2) class for possible declaratory or injunctive relief and a Rule 23(b)(3) class for possible money damages, and did so in a "hybrid" fashion, bifurcating the action in two phases: "the first phase [to] address[] the issue of liability under Rule 23(b)(2); and the second phase [to] address[] the damages issue under the procedure for Rule 23(b)(3) once liability is determined to exist." "In order to obtain class certification, a plaintiff has the burden of showing that the class should be certified and that the requirements of Rule 23 are met." Luiken v. Domino's Pizza, LLC, 705 F.3d 370, 372 (8th Cir. 2013) (quoting Coleman v. Watt, 40 F.3d 255, 258 (8th Cir. 1994)).

The parties describe this case very differently and these varying views drive each of their arguments on class certification. General Mills focuses intently on the vast differences between the class plaintiffs on the issues of injury, causation, and

-5-

damages. In response to General Mills' continued focus on the fact that many of the proposed class plaintiffs may not have any injury-in-fact, plaintiffs claim that they have all suffered the same injury (i.e., that General Mills contaminated this geographic area) such that there is commonality and the injurious conduct is the same, no matter that the resulting injurious effects (damages) are diverse. According to the class, they brought this suit to require General Mills to clean up its contamination and "[t]he jury's finding in the classwide trial concerning the geographical scope of contamination caused by General Mills will resolve all liability issues for Plaintiffs and the entire class." Accordingly, the class frames their claims as solely involving questions about General Mills' initial wrongdoing.

### A.   Standard of Review

"The district court has 'broad discretion to decide whether certification is appropriate.'" Smith v. ConocoPhillips Pipe Line Co., 801 F.3d 921, 925 (8th Cir. 2015) (quoting Prof'l Firefighters Ass'n of Omaha, Local 385 v. Zalewski, 678 F.3d 640, 645 (8th Cir. 2012)). "We will nonetheless reverse a certification where there has been an abuse of discretion or an error of law." Id. Further, the district court's factual findings underlying the certification ruling are reviewed under the "clearly erroneous" standard. Blades v. Monsanto Co., 400 F.3d 562, 566 (8th Cir. 2005).

### B.   Commonality Under Rule 23

Under Rule 23(a), a district court may certify a class only if it "is satisfied, after a rigorous analysis," that the four threshold requirements are met: numerosity of plaintiffs, commonality of legal or factual questions, typicality of the named plaintiff's claims or defenses, and adequacy of representation by class counsel. Falcon, 475 U.S. at 161; Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 613-15 (1997). In this case, the district court held there was no dispute regarding numerosity and commonality, and thus reviewed only the remaining factors of typicality (Rule 23(a)(3)) and

-6-

adequacy (Rule 23(a)(4)). On appeal, General Mills discusses the lack of commonality as it relates to the predominance question addressed under the Rule 23(b)(3) analysis.

The issue of commonality is the heart of the matter here. Rule 23(a)(2) first requires a plaintiff to show that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). How one articulates the claims in any given case could artfully carry the day on the issue of commonality, "since '[a]ny competently crafted class complaint literally raises common "questions."'" Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551 (2011) (quoting Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U.L. Rev. 97, 131-32 (2009)); Parko v. Shell Oil Co., 739 F.3d 1083, 1085 (7th Cir. 2014) ("Mere *assertion* by class counsel that common issues predominate is not enough. That would be too facile."). But merely advancing a question stated broadly enough to cover all class members is not sufficient under Rule 23(a)(2). "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" Dukes, 131 S. Ct. at 2551 (quoting Falcon, 457 U.S. at 1571). In a similar vein, the Rule 23(b)(3) analysis requires that: (1) common questions of law or fact predominate over questions affecting only individual members; and (2) that proceeding as a class action is the superior method of adjudication. Fed. R. Civ. P. 23(b)(3).

In Dukes, the Court acknowledged that a single common question "will do" for purposes of Rule 23(a)(2). Dukes, 131 S. Ct. at 2556 (determining that the plaintiffs failed in that matter to establish the existence of *any* common question). Here, the district court recognized that the issues of General Mills' standardized conduct of alleged contamination and the remedies sought by the class are common to all plaintiffs for purposes of Rule 23(a)(2) and we do not necessarily disagree. Indeed, as articulated, those are questions common to the class and we do not pause to quibble with the broad brush stroke used to define the "questions" at issue for

-7-

purposes of 23(a)(2) since we resolve the matter under 23(b)(3). Too, General Mills appears not to have challenged the district court on its Rule 23(a)(2) determination.[3]

In contrast to Rule 23(a)(2), the issue of predominance under Rule 23(b)(3) is qualitative rather than quantitative. Thus, that there is *a* common question does not end the inquiry. "[T]he predominance criterion is far more demanding." Amchem, 521 U.S. at 624. The requirements of the Rule 23(b)(3) analysis readily demonstrate why the district court must perform a rigorous analysis before determining that issues common to the class predominate over issues that differ among the individual class members. Comcast Corp. v. Behrend, 133 S. Ct. 1426, 1432 (2013).

The requirement of predominance under Rule 23(b)(3) is not satisfied if "individual questions . . . overwhelm the questions common to the class." Amgen Inc. v. Conn. Ret. Plans & Trust Funds, 133 S. Ct. 1184, 1196 (2013). "An individual question is one where 'members of a proposed class will need to present evidence that varies from member to member,' while a common question is one where 'the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof.'" Tyson Foods, Inc. v. Bouaphakeo, 136 S. Ct. 1036, 1045 (2016) (quoting 2 W. Rubenstein, Newberg on Class Actions § 4:50, pp. 196-97 (5th ed. 2012)). The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation," Amchem, 521 U.S. at 623, and "goes to the efficiency of a class action as an alternative to individual suits." Parko, 739 F.3d at 1085.

The district court abused its discretion in determining that the individualized issues in this case "do not predominate over the common issues for those questions

---

[3]For purposes of this analysis, we concede that this action satisfies the commonality requirement under Rule 23(a)(2), and we thus need not address whether any argument by General Mills regarding Rule 23(a)(2) commonality was waived, as the plaintiffs contend on appeal.

-8-

for which certification is sought." Indeed, it is the deliberate limiting of issues by this district court in this case that is problematic. Stated earlier, all actions can be articulated so that there are common questions. Here, by bifurcating the case and narrowing the question for which certification was sought, the district court limited the issues and essentially manufactured a case that would satisfy the Rule 23(b)(3) predominance inquiry. Concluding "that questions on individualized exposure will not be addressed as part of [the] questions for which the Court will agree to certify the class" complicates the litigation of the elements necessary to resolve the plaintiffs' claims. The district court's narrowing and separating of the issues ultimately unravels and undoes any efficiencies gained by the class proceeding because many individual issues will require trial.

To successfully establish the alleged claims, there are individual issues that will predominate on the matters of liability and damages. Adjudicating claims of liability will require an inquiry into the causal relationship between the actions of General Mills and the resulting alleged vapor contamination. This analysis will include many additional considerations beyond the limited inquiry into General Mills' liability. And, even on the certified issue of liability, there are determinations contained within that analysis that are not suitable for class-wide determination. To resolve liability there must be a determination as to whether vapor contamination, if any, threatens or exists on each individual property as a result of General Mills' actions, and, if so, whether that contamination is wholly, or actually, attributable to General Mills in each instance. Accordingly, accompanying a determination regarding General Mills' actions, there likely will be a property-by-property assessment of additional upgradient (or other) sources of contamination, whether unique conditions and features of the property create the potential for vapor intrusion, whether (and to what extent) the groundwater beneath a property is contaminated, whether mitigation has occurred at the property, or whether each individual plaintiff acquired the property prior to or after the alleged diminution in value. This action is directed at TCE in breathable air, where both its presence and effect differ by property. These matters,

to name a few, will *still* need to be resolved household by household even if a determination can be made class-wide on the fact and extent of General Mills' role in the contamination, which determination is problematic. Thus, any limitations in the initial action are, at bottom, artificial or merely preliminary to matters that *necessarily* must be adjudicated to resolve the heart of the matter. See In re St. Jude Med., Inc., 522 F.3d 836, 841 (8th Cir. 2008) (discussing conflicting authority on whether a class may be certified as to specific issues and whether such a class may be effectively maintained under Rule 23).

Although there may be common matters in this litigation that can be decided on a class-wide basis, we think it is clear that individual issues predominate the analysis of causation and damages that must be litigated to resolve the plaintiffs' claims. This matter is thus unsuitable for class certification under Rule 23(b)(3) and the district court therefore abused its discretion in certifying the class.

C.   **Rule 23(b)(2) Class**

As previously noted, the district court bifurcated the action into two phases, certifying classes under both Rule 23(b)(2) and (b)(3). The use of this sort of hybrid certification, insulating the (b)(2) class from the money-damage portion of the case, is an available approach that is gaining ground in class action suits. Newberg on Class Actions § 4:38. However, in the instant case the (b)(2) class fails for reasons similar to those already discussed.

Rule 23(b)(2) applies when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). In Dukes the Supreme Court clarified that "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class." 131 S. Ct. at 2557. Rule 23(b)(2) "does not authorize class

certification when each class member would be entitled to an individualized award of monetary damages." Id. Although a Rule 23(b)(2) class need not meet the additional predominance and superiority requirements of Rule 23(b)(3), "it is well established that the class claims must be cohesive." Barnes v. Am. Tobacco Co., 161 F.3d 127, 143 (3d Cir. 1998). In fact, cohesiveness is the touchstone of a (b)(2) class, as a (b)(2) class "share[s] the most traditional justification[] for class treatment," in that "the relief sought must perforce affect the *entire class at once*." Dukes, 131 S. Ct. at 2558 (emphasis added). Because a (b)(2) class is mandatory, the rule provides no opportunity for (b)(2) class members to opt out, and does not oblige the district court to afford them notice of the action, both of which are prescribed for (b)(3) classes. Id. For these reasons, the cohesiveness requirement of Rule 23(b)(2) is more stringent than the predominance and superiority requirements for maintaining a class action under Rule 23(b)(3). Gates v. Rohm and Haas Co., 655 F.3d 255, 269 (3d Cir. 2011).

In this case we need not determine whether these plaintiffs' claims for relief (i.e., comprehensive remediation efforts) lend themselves, even as bifurcated, to the (b)(2) limitations generally excluding individualized injunctions, declaratory judgments, and monetary damages, because at the outset the cohesiveness necessary to proceed as a class under (b)(2) is lacking.[4] Dukes, 131 S. Ct. at 2557 ("Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class. It does not authorize class certification when each individual class member would be entitled to a *different* injunction or declaratory judgment against the defendant. Similarly, it does not authorize class certification when each class member would be entitled to an individualized award of monetary damages."). While a determination regarding General Mills' liability, in the broad sense, *could* impact the entire class as a whole, as the district court advances, that

---

[4]Also because of the lack of cohesiveness in the first instance, we do not address General Mills' claim that the class plaintiffs are jurisdictionally barred from seeking injunctive relief in this case because Section 113(h) of CERCLA, 42 U.S.C. § 9613(h), divests the federal courts of jurisdiction to award the relief plaintiffs seek.

-11-

single determination, artificially narrowed by the district court to achieve class status, does not advance the efficiencies necessary for such treatment in this case. The resolution of that single question does not apply uniformly to the entire class, as in reality, the issue of liability and the relief sought by these homeowners is, at bottom, highly individualized.

It is the disparate factual circumstances of class members that prevent the class from being cohesive and thus unable to be certified under Rule 23(b)(2). See Gates, 655 F.3d at 264. Here, as mentioned in our discussion of the (b)(3) certification, the individual proof necessary to resolve the issues abound and thus the matter founders for lack of cohesion. As noted in the (b)(3) analysis, there are myriad considerations on the issues of liability and damages. The remediation sought is not even universal and these distinctions matter at this stage under the rigorous analysis required, despite the district court's determination that addressing these distinctions are "premature." Remediation efforts on each of the affected properties, should they be awarded, will be unique. This is most easily exemplified by the fact that some class members (and all of the named plaintiffs) have received customized VMS systems and some have not, some tested properties evidenced the existence of TCE soil vapors at widely varying levels and some did not–these matters cannot be tried separately in order to justify the certification of a class if any semblance of efficiency is to be touted in these proceedings. For these reasons the district court abused its discretion in certifying the class under Rule 23(b)(2) as well.

In view of our decision that the class certification is unsustainable under the Rule 23 considerations discussed herein, we find it unnecessary to consider the other arguments advanced by General Mills. "We believe it prudent not to decide issues unnecessary to the disposition of the case, especially given the numerous constitutional issues implicated in such an analysis." In re St. Jude Med., 522 F.3d at 841 (quoting In re St. Jude Med., 425 F.3d at 1120). Too, given the reversal of

-12-

certification, the issue regarding the challenged expert witness testimony is moot at this stage.

## III.   CONCLUSION

We reverse the certification order and remand the case to the district court with directions to revisit the issues raised in conformity with this opinion.

_____

-13-